FREEMAN., J.,
delivered the opinion of the court:
This bill is filed bj Chester to1 rescind a contract by which Chester conveyed 4,000 acres of land to defendants —that is, 2,000 to each — in consideration of a small tract of 150 acres in McNairy county, Tennessee, and three lots in Coolc county, Illinois, in what was known, or represented to be, as Frisbie’s Addition to South Chicago, Town of Hyde Park, numbered as lots 32, 33, and 34, fronting twenty-five feet on Sheridan street, running back one hundred and twenty-five feet.
The trade was made with Canfield, in the city of Jackson, Tennessee, on the seventh of September, 1870, he being the sole owner 'of the property, his co-defendant, Hull, being charged as present and participating in the transaction, and equal participant in the fraud, as is evidently believed by complainant. The trade, however, is shown to have been made entirely with Canfield, it having been commenced on the evening of the sixth, and completed next day. After the parties had agreed on the terms *311 of tlieir trade, Canfield represented lie liad sold one-half the land to Hull, and requested that a deed to one-half of it be made direct to him, to save trouble and expense of two conveyances, which was done.
The grounds of relief set up in the. bill are fraudulent misrepresentations, first, as to the land in McHairy county —that isj that it lay within three miles of the Mobile & Ohio Railroad, and was worth $15 per acre, whereas, in fact, it is charged to have been not worth more than three or four dollars per acre, and was situated seven miles from the railroad. We may put this out of the case, as it probably was the folly of complainant to trust to the statements of an entire stranger in a matter which he could have informed himself of in a few hours at most, by a short ride by rail to the neighborhood.
As to the Chicago lots, however, the case is different; they were in a distant state, and, it is alleged, Canfield represented these lots to be located within three miles of the business portion of Chicago, and within easy access of said city; that he had been offered $2,000 each for them. In fact, it is charged, the lots are more than ten miles from the city, in a swamp or marsh, and utterly worthless.
The proof shows that Canfield told Chester he had never seen the lots, but had seen the McWairy land, and this is probably the fact. We need not go at any length into the question between complainant and Canfield. It suffices to say, his representations are proven as strongly as charged, with reference to the lots, and are as certainly proven to be false in every particular. The lots are about eleven miles from the city, are in a marsh, subject to overflow, the streets are only on a map, and Chicago extended in this direction is a myth, the lots having probably no market value, estimated by real estate men knowing them as worth twenty-five or thirty dollars each, nominally. So far as Canfield is concerned, there^is no difficulty in the case. The representations were grossly false, were recklessly made, and confided in by Chester.
*312 Whether a party misrepresenting a fact knew it to be false, or made an assertion without knowing it to be true, on which another relies, is immaterial in a court of equity. It equally operates as a. surprise and imposition on the other party, and is ground for relief. See Heis. Dig., p. 376, and cases cited. As to defendant Hull the case presents more of difficulty. He and Canfield both swear in their depositions that Hull had nothing to do with the trade, and bought alone from Canfield. Hull’s answer, though the oath is not waived, must stand only as an un-sworn answer, as it is not certified to so as to make the affidavit effective, the prothonotary not certifying or showing he was a clerk of the court in which the justice of the peace presided, as required by the Code, sec. 4398, so that the answer but makes an issue. Canfield’s deposition cannot go for any thing, as his gross and wanton misrepresentations, made regardless of truth, show him unworthy of credit.
The case must stand on the other proof in the record. It shows that Canfield and Hull were acquainted before; had been probably together some two weeks; that they went together to Chester the evening of the sixth, when the negotiation commenced; that they went back to meet Chester the next morning together. Hull sat by during the trade and heard all that was said, and is proven by Chester to have said the lots were probably worth the money, or the trade was a good one. He claims to have had no interest whatever in the matter, but he seems to have had an understanding that night, or before going to Chester’s office, with Canfield, that the trade was to be made, and to have arranged for his share of the land. This was all agreed on before the terms of the trade had been agreed on, so that as soon as it was completed, the deed was directed to be made to him. It is hardly conceivable that he should not have conferred fully with Canfield on the subject of the trade, and known all his plans; in fact, all the circumstances indicate a plan on the part of a *313 couple of sliarpers to take an advantage and make a speculation out of a too confiding owner of lands — lands shown to have been worth at least $6,000, while the lands given for them are not worth $500, if that.
In addition to this view, there are contradictions between Canfield and Hull in their statements as to the consideration paid for the 2,000 acres conveyed to Hull. Hull swears, he paid, at the time of making the deed, $1,760: soon after, at Cincinnati, $140 more, also an interest in a patent seed drill, and other sums, he says, at different times; and in addition, paid for the stamps on the deed, amounting to $30 or $40. Canfield says, he received $1,542 for the land, the greater portion paid at the time. It is, however, shown that both of them represented they had but little money, and Chester was compelled to pay for registration of the deeds on this plea. In Hull’s answer, however, he states the consideration the same as that given by Canfield. There are other contradictions that might be pointed out, but these suffice.
We conclude that it appears, from a fair preponderance of the proof, that Hull was party to the misrepresentation and fraud of Canfield; that he took the benefit of the same under circumstances of suspicion that compel us to the conclusion that he must stand or fall with his confederate. The chancellor so held, and we affirm his decree, except we direct title to be divested by decree instead of recon-veyances, and that Canfield pay the costs of this and the court below, inasmuch as the land in McNairy county will satisfy the costs, and is within reach of an execution.
Let the decree be affirmed with these modifications.